Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 5381 | DATE | 12/4/2000 |
| CASE TITLE | EEOC vs. MID-CONTINENT SECURITY AGENCY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Mid-Continent's motion for summary judgment [13-1] is denied. The case is set for a status hearing on 12/12/00 at 9:30a.m. for the purpose of setting a trial date.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| TBK | courtroom deputy's initials |

number of notices

date docketed

docketing deputy initials

date mailed notice

00 DEC -4 PM 3:20

Date/time received in central Clerk's Office

mailing deputy initials

Document Number
23

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
　)
Plaintiff, )
　)
　)
v. ) Case No.　99 C 5381
　)
　)
MID-CONTINENT SECURITY )
AGENCY, INC., )
　)
　)
Defendant. )
　)

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In August 1998, Samuel Campbell was discharged from his position as an usher employed by Mid-Continent Security Agency. At the time, Campbell was undergoing chemotherapy for stomach cancer. The Equal Employment Opportunity Commission (EEOC) has filed a complaint on Campbell's behalf, alleging that Mid-Continent violated the provisions of the Americans with Disabilities Act (ADA) by failing to accommodate Campbell's disability and by terminating his employment. Mid-Continent moves for summary judgment, arguing that it is not covered by the ADA because it is not a business that "affects commerce"; that Campbell was not a qualified individual with a disability under the ADA because he was unable to perform an essential function of the job, regular attendance; and that there is insufficient evidence of discriminatory intent to support the ADA claim. Mid-Continent also moves for partial summary

1



judgment to limit any back pay award and to strike the EEOC's request for punitive damages. The Court denies Mid-Continent's motion for the reasons discussed below.

**FACTUAL BACKGROUND**

Mid-Continent is an agency that provides ushers and security guards to Chicago area clients, including the Hawthorne Racecourse, the City of Chicago and the Taste of Chicago. Mid-Continent first hired Campbell as an usher around July 2, 1998. Campbell, who had been diagnosed with stomach cancer in December 1996, was undergoing chemotherapy via a 24-hour concealed pump. Campbell did not inform Mid-Continent of his cancer or the chemotherapy in July 1998.

Campbell's duties as an usher included patrolling the floor at the race track, directing patrons to their seats and watching the money line. Campbell testified that on July 10, 1998, Mid-Continent supervisor Warren Bishop granted his request to take some time off to prepare for his wedding. Relying on Bishop's permission, Campbell did not report for work as scheduled on July 11 and 12. Mid-Continent, though, claims that Campbell's absences on July 11 and 12 were unexcused and unexplained. Mid-Continent terminated Campbell on July 12, 1998.

Campbell returned from his honeymoon on July 25, 1998 and telephoned Bishop on August 7. Bishop met with Campbell on August 8. Campbell says that he informed Bishop that he needed to take Mondays off for chemotherapy, and presented a letter from his oncologist. The oncologist's letter explained that Campbell was fit to return to his position as usher, but that he would require some time off to receive chemotherapy. Bishop agreed to give Campbell Mondays off. Campbell resumed work as an usher on Sunday, August 9, 1998.

Campbell did not report for work on Monday, August 10. He testified that when

2

he reported for his scheduled shift on Tuesday, August 11, he was greeted by another supervisor, Charles McGhee. According to Campbell, McGhee demanded to know why he did not report for work on Monday, and was unreceptive to his explanation regarding his chemotherapy and the scheduling agreement he had reached with Bishop. McGhee allegedly told Campbell, "[i]f you're too sick to work Mondays, you can't work at all." Mid-Continent denies that Campbell reported for work on August 11, and its records show that McGhee wrote Campbell up for unexplained absences on August 12 and 13. Campbell's termination was approved by Marc Koronkiewicz, Mid-Continent's General Manager of Operations.

In September 1998, Campbell started working as an usher for Safety Systems, but he stopped working in January 1999. Campbell succumbed to cancer in November 1999. McGhee also died in November 1999.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that judgment as a matter of law would be inappropriate in the present case. *Hedberg v. Indiana Bell Co.*, 47 F.3d 928, 931 (7th Cir. 1995). In considering a motion for summary judgment, we draw all reasonable inferences from the record in the light

most favorable to the non-moving party. *Id.*; *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987).

I.  **Motion for Summary Judgment on EEOC's ADA Claim**

The ADA provides that no "covered entity" may discriminate against "a qualified individual with a disability" because of the person's disability. 42 U.S.C. §12112(a). In addition to prohibiting adverse employment decisions (i.e., disparate treatment) when those decisions are based on the individual's disability, the ADA also requires the employer to make reasonable accommodations to "the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. §§ 12112(a) & (b)(5)(A); *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997).

The EEOC characterizes its claim as both a disparate treatment claim and a reasonable accommodation claim. Mid-Continent argues that it is entitled to summary judgment on the EEOC's ADA claim because (1) it is not a "covered entity" because its business does not "affect commerce;" (2) Campbell is not a "qualified individual with a disability;" and (3) Mid-Continent did not "discriminate" against Campbell because of his disability. For the reasons discussed below, the Court denies Mid-Continent's motion for summary judgment on the ADA claim.

A.  **Is Mid-Continent is a "Covered Entity" Under the ADA?**

Mid-Continent argues that summary judgment is appropriate on the grounds that it is not a "covered entity" under the ADA because it is not "engaged in an industry affecting commerce." 42 U.S.C. § 12111(2) & (5)(A). Mid-Continent offers no legal support for its contention, relying instead on its allegations that it provides ushers only locally within Chicago and that its only

4

purchases are from uniform stores located in Chicago. Mid-Continent's argument is without merit.

The ADA refers to 42 U.S.C. § 2000e(h), which defines an "industry affecting commerce" as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce." Courts evaluating whether an employer's business affects commerce have noted that "the 'affects commerce' jurisdictional obstacle is very low indeed." *EEOC v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990). An employer will be determined to "affect commerce" if it uses items that have moved through interstate commerce at some point in their lives, *United States v. Dye Construction Co.*, 510 F.2d 78 (10th Cir. 1975), or serves persons from out of state, *Lucido v. Cravath, Swain & Moore*, 425 F. Supp. 123 (S.D.N.Y. 1977), or engages in an activity that, even if purely local, would alter the relationships of an interstate market, *Wickard v. Filburn*, 317 U.S. 111 (1942). *See Ratliff*, 906 F.2d at 1316; *EEOC v. Association of Community Organizations for Reform Now*, No. 93-0597, 1995 WL 107075, at *3 (E.D. La. Mar. 8, 1995).

Here, the EEOC has pointed to evidence sufficient for a jury to conclude that Mid-Continent engages in an industry affecting commerce. First, there is some evidence that Mid-Continent uses items that have moved through interstate commerce. Mid-Continent purchases paper and supplies from Kinko's, a national retailer, and its uniforms may be manufactured outside the state of Illinois. Second, Mid-Continent clearly serves persons from out of state. Tourists from around the country and the world attend the Taste of Chicago and other events for which Mid-Continent provides ushers. These facts support a conclusion that Mid-Continent's business affects commerce.

## B.     Is Campbell a "Qualified Individual with a Disability"?

To recover under the ADA, the EEOC must show that Campbell was a "qualified individual with a disability" and that he was discriminated against because of that disability. 42 U.S.C. § 12112(a); *Ross v. Indiana State Teacher's Association Insurance Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998), *cert. denied*, 119 S.Ct. 1113 (1999). Mid-Continent does not dispute that Campbell's stomach cancer constituted a disability for purposes of ADA protection, nor does Mid-Continent seriously dispute that it was aware of Campbell's condition in August 1998. An individual with a disability is "qualified" for employment if he or she can perform the essential functions of the job with or without reasonable accommodation. 42 U.S.C. § 12111(8). The determination of whether an individual is qualified must be made "as of the time of the employment decision." *Ross*, 159 F.3d at 1013 (citing *Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir. 1998)); *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1993). Thus, to prevail under the ADA, the EEOC must show that, when Mid-Continent terminated him on or around August 10, 1998, Campbell was capable of performing the essential functions of his usher job.

Mid-Continent argues that Campbell was not a "qualified individual" subject to the ADA's protection because Campbell was incapable of satisfying an essential function of his job: regular attendance. There is no question that "generally attendance is a requirement of a job." *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999). *See also Nowak*, 142 F.3d at 1003 ("[A]n employee who does not come to work cannot perform the essential functions of his job."); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 602 (7th Cir. 1998) ("We do not dispute that a business needs its employees to be in regular attendance to function

6

smoothly...."). Mid-Continent's invocation of this authority, however, does not entitle it to summary judgment, as there is a genuine dispute as to whether Campbell had even one unexcused absence during his two short tenures with Mid-Continent.

First, Campbell disputes that his absences on July 11 and 12 were unexcused. Additionally, there is substantial evidence in the record that Mid-Continent's scheduling and absence policies were extremely flexible.[1] The real question, though, is whether the EEOC can show "at the time [Campbell] was terminated, that []he was able to attend work reliably." *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927 (7th Cir. 1998). Evaluating the record in the light most favorable to the EEOC, as we are required to do, *Hedberg*, 47 F.3d at 931, we find that the EEOC has raised a genuine issue of material fact concerning Campbell's ability to attend work reliably at the time that he was discharged. Both Campbell and his wife testified that contrary to Mid-Continent's version of the facts, Campbell did report to work as scheduled on Tuesday, August 11, 1998. Further, the letter from Campbell's oncologist stated that Campbell was able to perform the functions of his job so long as he received time off to attend his weekly chemotherapy session. Thus, the EEOC has provided sufficient evidence from which a reasonable jury could conclude that Campbell was able to perform the essential functions of his job, including regular attendance, provided that Mid-Continent accommodated Campbell by giving him Mondays off.

---

[1]Although Mid-Continent's official policy provides that employees will be terminated after six unexplained absences, the record is replete with evidence that this policy was seldom followed. Mid-Continent's supervisory personnel testified that, in order to retain its employees, the company did not strictly enforce its absenteeism policy. Moreover, the EEOC has pointed to evidence showing that Mid-Continent has retained several apparently non-disabled employees with ten or more unexcused absences in six months or less of employment.

7

## C. Did Mid-Continent "Discriminate" Against Campbell?

The Court now considers whether there is sufficient evidence to create a factual issue regarding whether Mid-Continent "discriminated" against Campbell because of his disability. The EEOC contends that Mid-Continent discriminated against Campbell in two ways: (1) by failing to provide reasonable accommodations for his disability; and (2) by terminating him because of his disability. The Court analyzes each of these claims separately.

### 1. Failure to Accommodate

The EEOC alleges that Mid-Continent discriminated against Campbell by failing to provide him the reasonable accommodation he sought, namely, Mondays off for chemotherapy. The Court finds that the EEOC has provided enough evidence of Mid-Continent's failure to provide reasonable accommodation to survive summary judgment.

"Discrimination," as defined by the ADA, includes the failure of the employer to make "reasonable accommodations" for the qualified individual's disability. 42 U.S.C. 12112(b)(5)(A). "Reasonable accommodations" include "job restructuring, part-time or modified work schedules," such as the one day off per week requested by Campbell. 42 U.S.C. § 12111(9)(B). "The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Vande Zande v. Wisconsin Department of Administration*, 44 F.3d 538, 543 (7th Cir. 1995). Once an employer is aware of an employee's need for an accommodation, it "must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (citing *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).

8

The reasonableness of an accommodation is a question of fact. *Haschmann v. Time Warner Entertainment*, 151 F.3d 591, 601 (7th Cir. 1998).

Mid-Continent argues that it readily granted Campbell Mondays off as requested and that the EEOC's failure to accommodate claim therefore must fail. The record, however, raises the inference that Mid-Continent refused to provide this accommodation. Campbell testified in his deposition that when he reported to work on Tuesday, August 11, McGhee demanded to know why he had not worked on Monday. According to Campbell, McGhee refused to listen to his explanation about having received permission from Bishop to take Mondays off to attend chemotherapy. Rather, McGhee allegedly terminated Campbell for his failure to report on Monday, telling him, "if you're too sick to work on Mondays, you can't work at all." Viewing the evidence in the light most favorable to the EEOC, there is a genuine issue as to whether Mid-Continent granted Campbell's request or engaged in the "interactive process" required by the ADA to determine what accommodation would allow Campbell to maintain his employment.

For these reasons, the Court denies Mid-Continent's motion for summary judgment on the EEOC's failure to accommodate claim.

### 2. Disparate Treatment

The EEOC further claims that Mid-Continent intentionally discriminated against Campbell by terminating him because of his disability. The EEOC may establish that Campbell was discharged in violation of the ADA by either direct or indirect evidence. *See Leffel v. Valley Financial Services*, 113 F.3d 787, 792 (7th Cir. 1997). The EEOC claims that it can sustain its claim under either method.

9

### a.  Direct Proof Analysis

To survive summary judgment under the direct proof method, the EEOC must present sufficient evidence to allow a rational jury to conclude that Mid-Continent would not have terminated Campbell but for his disability. *See Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000). "[R]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997). When proceeding under the direct proof method, however, "in order for allegedly discriminatory remarks to 'qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.'" *Robin*, 200 F.3d at 1089 (quoting *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996)).

As direct proof of Mid-Continent's discriminatory intent, the EEOC offers the single remark that McGhee allegedly made while terminating Campbell on August 11: "If you're too sick to work on Mondays, you can't work at all."[2] To the extent McGhee's remark is ambiguous or capable of innocent construction -- *i.e.*, that it concerned Campbell's absence, not his disability -- it is the jury's role to "disambiguate" the statement, *see Huff v. Uarco, Inc.*, 122 F.3d 374, 384 (7th Cir. 1997), and we are not required to accept Mid-Continent's proffered innocent construction of the remark, *see Sheehen v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999). According to Campbell, immediately before McGhee made the statement, he explained to

---

[2]McGee's statement is not hearsay, *see* Fed. R. Evid. 801(d)(2)(D), and Mid-Continent has offered no reason why Campbell's testimony regarding the statement would be inadmissible.

10

McGhee that he had been given Mondays off to receive chemotherapy for his cancer. This is enough to permit a jury to find that McGhee's comment, assuming it was made, concerned Campbell's disability and not merely his absence.

McGhee's remark, given its temporal proximity (three days) to Campbell's request that he receive Mondays off for chemotherapy, and the fact that it occurred contemporaneously with Campbell's discharge, qualifies as direct evidence of intentional discrimination. *See Sheehan*, 173 F.3d at 1044 (supervisor's remark that pregnant employee would be happier at home with her children constituted direct evidence of discrimination when made contemporaneously with her firing); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir.), *cert. denied*, 525 U.S. 870 (1998) (isolated comments may constitute direct evidence of discrimination if they are "contemporaneous with the discharge or causally related to the discharge decision making process").

Having determined that the EEOC has presented sufficient direct evidence of intentional discrimination, the pertinent inquiry becomes whether Mid-Continent's "evidence as to the legitimate reasons for terminating [Campbell] eliminates any doubt as to whether [disability] played at least a motivating role in [his] discharge." *Venters*, 123 F.3d at 974. Mid-Continent has marshaled evidence that Campbell's discharge was motivated by Campbell's absenteeism, a valid reason for termination, rather than by his disability. We have already determined, however, that a genuine issue of material fact exists as to whether Campbell was ever absent without permission, particularly given Mid-Continent's admittedly flexible attendance policies. Accordingly, Mid-Continent's evidence of a legitimate reason for Campbell's termination is insufficient to eliminate doubt as to whether Campbell's disability motivated Mid-Continent's

decision at least in part. The EEOC therefore survives summary judgment under the direct proof method.

### b. Indirect Proof Analysis

The EEOC also survives summary judgment under the indirect proof method, which requires the Court to evaluate the evidence under the burden-shifting paradigm established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this framework, the EEOC must show (1) that Campbell had a disability as defined by the ADA; (2) that he was qualified to perform the essential functions of the position he held; (3) that he was terminated; and (4) his termination was under circumstances giving rise to an inference of discrimination. *See id.*; *Leffel v. Valley Financial Services*, 113 F.3d 787, 792 (7th Cir. 1997), *cert. denied*, 118 S.Ct. 416 (1997). If the EEOC meets this initial burden, it raises an inference that Campbell was discriminated against due to his disability. The burden then shifts to Mid-Continent to produce a legitimate, nondiscriminatory reason for the adverse employment action. If Mid-Continent does so, the EEOC must respond with evidence that indicates that Mid-Continent's stated reason for the termination was a pretext for unlawful termination. *See Leffel*, 113 F.3d at 792.

The EEOC has met its initial burden. As discussed above, Mid-Continent does not dispute that Campbell was disabled, and the Court has already determined that a genuine issue of fact exists as to whether Campbell was a "qualified individual" subject to ADA protection. Further, the evidence shows that Campbell was terminated. Finally, the circumstances of Campbell's termination give rise to an inference of discrimination: he was terminated three days after requesting an accommodation to attend chemotherapy sessions, and McGhee's remarks about Campbell's sickness were made contemporaneously with the termination. The EEOC has

12

also pointed to sufficient evidence to raise an inference that Mid-Continent's proffered legitimate reason for firing Campbell, absenteeism, was pretextual. This evidence consists of testimony disputing that Campbell ever had an unexcused absence from work (discussed at some length above), McGhee's arguably discriminatory remarks, testimony regarding the flexibility of Mid-Continent's attendance policy, and evidence showing that apparently non-disabled workers were allowed to retain their jobs even after up to ten unexcused and unexplained absences in less than six months. The Court therefore denies Mid-Continent's motion for summary judgment on the EEOC's disparate treatment claim.

## II. Mid-Continent's Motion for Partial Summary Judgment to Limit Back Pay Damages

Mid-Continent also seeks to limit back pay damages to the period spanning August 12, 1998 to January 1999. As a general matter, the Court agrees with Mid-Continent's statement that a back pay award should be limited to the period in which the individual would have been able to work but for the defendant's discriminatory conduct. *See Flowers v. Komatsu Mining Systems, Inc.*, 165 F.3d 554, 557 (7th Cir. 1999) (remanding trial court's award of back pay award to account for periods when plaintiff's disability rendered him unable to work). In this case, however, that time period is disputed. The Court has found no evidence in the record to indicate that, although Campbell stopped working for Safety Systems in January 1999, he was completely *unable* to work from that time forward. Contrary to the claims in defendant's Rule 56.1(a)(3) statement of material facts, Campbell did not testify that "he has not been able to work since January 1999 . . ." *See* Def.'s R. 56.1(a)(3) Stmt., ¶ 145. Because the time period during which

Campbell was completely incapacitated is disputed, Mid-Continent's motion for partial summary judgment limiting the back pay award is denied. The issue will be one for the jury to decide.

## III. Mid-Continent's Motion for Partial Summary Judgment on Punitive Damages

Finally, Mid-Continent seeks partial summary judgment on the EEOC's claim that Campbell is entitled to punitive damages under the ADA. Mid-Continent argues that it is entitled to summary judgment on this point because the EEOC will not be able to prove that Mid-Continent intentionally violated the ADA by terminating Campbell. Evaluating the record in the light most favorable to the EEOC, the Court denies Mid-Continent's motion.

Under 42 U.S.C. § 1981a(a)(1) & a(b)(1), punitive damages are available for "intentional" violations of the ADA where the employer engages in a "discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." In *Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999), the Supreme Court held that establishing the necessary "malice" or "reckless indifference" does not depend on the egregiousness of the employer's behavior, but rather depends on the employer's "knowledge that it may be acting in violation of federal law." *See also Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000). Thus, to recover punitive damages in this case, the EEOC must show that Mid-Continent acted "in the face of a perceived risk that its actions [would] violate federal law." *Kolstad*, 527 U.S. at 536; *Gile*, 213 F.3d at 375.

We disagree with plaintiff's argument that Mid-Continent may be liable for punitive damages on the grounds that its General Manager, Marc Koronkiewicz, approved Campbell's discharge with knowledge or reckless disregard that the discharge violated the law. The EEOC's argument appears to be that Koronkiewicz could have pieced together, from facts he had been

14

told over a period of time, that Campbell had been discharged for not showing up on a day he had been given off based on a doctor's request. This is not sufficient to constitute knowledge or reckless disregard of a violation of Campbell's federal rights; at most it was negligent on Koronkiewicz's part. Negligence is not sufficient to entitle a plaintiff to punitive damages. *Gile*, 213 F.3d at 375-76.

Plaintiff may, however, be entitled to recover punitive damages based on McGhee's conduct alone. The Supreme Court has made it clear that punitive damages may be imposed on an employer for the conduct of a manager acting within the scope of his employment as long as the manager is not acting contrary to the employer's "good faith" efforts to enforce the ADA. *See Kolstad*, 527 U.S. at 545-46. On the present record, we cannot rule out the possibility that McGhee acted with knowledge or reckless disregard that his firing of Campbell, allegedly for seeking and obtaining an accommodation for his disability, violated Campbell's federally protected rights. We also leave for another day the question whether punitive damages can be imposed on Mid-Continent for McGhee's conduct even if McGhee did not know he was violating the law, if the EEOC is able to show that Mid-Continent made little or no effort to educate its employees about the ADA's requirements and prohibitions. *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1246 (10th Cir. 1999) (holding that a reasonable jury could find that plaintiff's suspension warranted punitive damages where decision maker who approved employment action was familiar with the ADA's prohibition of discrimination in the workplace).

## CONCLUSION

Mid-Continent's motion for summary judgment [Item 13-1] is denied. The case is set for a status hearing on December 12, 2000 at 9:30 a.m. for the purpose of setting a trial date.

Dated: December 4, 2000.

_____
MATTHEW F. KENNELLY
United States District Judge