Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 5381 | DATE | 7/11/2001 |
| CASE TITLE | EEOC vs. Mid-Continent Security | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for judgment as a matter of law (47-1) is denied. Defendant's motion to alter or amend judgment (48-1) is granted. Enter Amended Judgment in favor of defendant on plaintiff's termination claim. Judgment is entered in favor of plaintiff on its accommodation claim, in the amount of $961.50 for back pay, $187.50 for compensatory damages, and $184,000 for punitive damages. Defendant's motion for a remittitur of the punitive damages award (47-2) is granted. The Court will order a new trial on the issue of punitive damages unless plaintiff accepts, on or before 7/30/01, a reduction of the punitive damage award to $50,000.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 1 2 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| OR | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 11 PM 5:03 Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
 )
        Plaintiff, )
 )
vs. ) Case No. 99 C 5381
 )
MID-CONTINENT SECURITY AGENCY, INC., )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Equal Employment Opportunity Commission brought this action under the Americans with Disabilities Act, 42 U.S.C. §12117(a), claiming that Mid-Continent Security Agency, Inc. violated the Act by failing to accommodate the disability of Samuel Campbell and by terminating Campbell allegedly because of his disability. The Court held a three-day jury trial in April 2001, and the jury returned a verdict in the EEOC's favor on the accommodation claim and in Mid-Continent's favor on the termination claim. The jury awarded $961.50 in back pay, $187.50 in compensatory damages for emotional distress, and $184,000 in punitive damages. Mid-Continent has moved for entry of judgment as a matter of law on the accommodation claim, or alternatively for a remittitur of the punitive damages award. It has also moved to amend the judgment to reflect the verdict in its favor on the termination claim.

### Facts

Mid-Continent supplies ushers and security guards to businesses and venues in the Chicago area, including the Hawthorne Race Course and the Taste of Chicago festival. It first hired Campbell in July 1998, and it terminated him in August 1998. Taken in the light most

favorable to the EEOC, *see, e.g., Mathur v. Board of Trustees,* 207 F.3d 938, 941 (7th Cir. 2000), the evidence showed the following. Mid-Continent was aware when it hired Campbell that he was suffering from cancer. Campbell worked for a few days in July and then asked his supervisor Warren Bishop for time off because he was getting married. Bishop agreed. Campbell contacted Bishop on Friday, August 7 and asked to come back to work. Bishop agreed, and Campbell reported to work on Saturday, August 8 and was reinstated. He gave Bishop a letter from his doctor stating that he needed Mondays off so he could undergo chemotherapy. Bishop agreed to give Campbell Mondays off. Campbell worked on Sunday, August 9, but consistent with the accommodation Bishop had given him, he did not report for work on Monday, August 10. When Campbell reported to work on August 11, another supervisor, Charles McGee, asked where he had been the previous day. Campbell said that he had permission to be off work. When McGee expressed skepticism, Campbell retrieved his doctor's letter and showed it to McGee. McGee replied that if Campbell was too sick to work on Monday, he was too sick to work at all, and he fired Campbell.

## Discussion

### 1. Motion for judgment as a matter of law

The Court permitted the EEOC's accommodation claim to go to the jury on the theory that giving a person an accommodation, then firing him for taking advantage of it, is no different from giving him no accommodation at all. The Court likewise believed that McGee's alleged comments in terminating Campbell provided a sufficient basis for the jury to find that Campbell was terminated because of his disability. The Court remains persuaded that these rulings were correct.

2

Mid-Continent argues that the jury's verdict in its favor on the termination claim entitles it to JMOL on the accommodation claim. It relies primarily on *Foster v. Arthur Andersen LLP*, 168 F.3d 1029 (7th Cir. 1999), which appears to conclude that proof of "adverse employment action" (such as termination) is an element of a failure-to-accommodate claim. Mid-Continent says the jury's verdict on the termination claim must mean it concluded that the EEOC had not proven that Campbell suffered adverse employment action because of his disability; it argues that this conclusion is fatal to the accommodation claim. For its part, the EEOC argues that the claims were separate and distinct, that the jury was so instructed, and that the verdict in its favor on the accommodation claim cannot be overturned simply because Mid-Continent obtained a favorable verdict on the termination claim.

In interpreting the jury's verdict, we must look to what the jury was actually told it had to decide. Despite *Foster's* indication that proof of adverse action is required to establish an accommodation claim, the jury in this case was not instructed that the EEOC had to prove that element to prevail on its accommodation claim. Mid-Continent did not object to the instructions on that basis and thus waived any argument that it is entitled to judgment because this element was missing from the proof. Moreover, *Foster* involved review of a ruling on summary judgment, not a verdict returned by a jury. None of the cases cited by Mid-Continent speak to what a court should do if a jury returns verdicts on separate counts that seem inconsistent with each other, as is the case here.

Even if it were appropriate to interpret the jury's verdict on the termination claim in the manner suggested by Mid-Continent, that would not entitle Mid-Continent to JMOL on the accommodation claim. A court cannot grant JMOL in order to harmonize jury verdicts that

3

appear to point in opposite directions. *See, e.g., Mosely v. Wilson,* 102 F.3d 85, 90 (3d Cir. 1996). If it appears that the jury returned inconsistent verdicts, the Court must first do its best to reconcile the verdicts on some theory consistent with the evidence. *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 119 (1963); *Cantellops v. Alvaro-Chapel,* 234 F.3d 741, 744 (1st Cir. 2000); *Ward v. City of San Jose,* 967 F.2d 280, 286 (9th Cir. 1992). If we cannot do so, however, it is improper to take the verdict favorable to one party and assume it is the "right" one, as Mid-Continent has asked us to do. *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 677 (7th Cir. 1985); *Mosely,* 102 F.3d at 90. Rather, the appropriate remedy is a new trial on all claims. *Gordon v. Degelmann,* 29 F.3d 295, 298-99 (7th Cir. 1994).

On the surface it might appear that the verdicts on the two claims are irreconcilable. Both claims turn on a single event: the encounter between Campbell and McGee on August 11. One might think that for this reason, the jury could not properly resolve the two claims differently. But in fact the verdicts can be harmonized. The jury was entitled to find in the EEOC's favor on the accommodation claim on the theory that we previously articulated: that in light of its flexible scheduling policies, Mid-Continent was required by the ADA to give Campbell a day off for his chemotherapy, and that by telling him he could take Mondays off and then firing him for doing so, it had failed to provide a reasonable accommodation. With regard to the termination claim, the jury could have concluded that McGee terminated Campbell not because he was disabled, but because he sought and obtained an accommodation. That conclusion would have required a verdict for Mid-Continent on the termination claim: the jury was told, without objection from either side, to find for the EEOC only if it proved that Mid-Continent terminated Campbell because he was disabled.

4

In sum, because the jury's verdicts on the two claims reasonably can be reconciled in a way consistent with the evidence, there is no basis to grant Mid-Continent JMOL, or even a new trial, on the accommodation claim.

We will deal briefly with several other challenges to the verdict raised by Mid-Continent. First, we reject Mid-Continent's claim that there was no basis to find that it was a "covered entity" under the ADA. *See* 42 U.S.C. §12111(2), (5)(A). This point was dealt with adequately at trial and in the Court's order denying summary judgment, and we see no need to repeat that discussion. Second, we reject Mid-Continent's claim that it should have been permitted to present testimony that McGee, who died prior to trial, had told Mid-Continent's president at some time prior to August 1998 that he had cancer. The testimony was inadmissible hearsay, as it represented information that McGee had learned from a doctor, and it also lacked significant probative value. *See Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir. 1999) (expressing doubt as to the validity of generalizations that a member of a minority group is less likely than others to discriminate against members of the group). Finally, the Court is not persuaded either that the instruction defining "accommodation" unfairly broadened the appropriate basis for imposing liability or that the reference in that instruction to the need for an employer to engage in an "interactive process" to determine proper accommodation was inappropriate, particularly in view of the way in which McGee was claimed to have dealt with the accommodation that Bishop had approved.

2.  **Damages issues**

Mid-Continent has moved to vacate the back pay and compensatory damages awards on the grounds that there was no proper basis to award any amounts at all. The Court rejects this

5

argument. There is no requirement that an ADA (or other Title VII) plaintiff present evidence of emotional distress beyond his own testimony. Campbell's testimony on this score was no more "self-serving" that the testimony of any other interested witness or party. The Court likewise believes that Campbell's testimony was sufficient to support the back pay award. Campbell testified, and the evidence otherwise supported, that he was physically able to work for a period of time after August 11, and the jury reasonably could infer that Mid-Continent had just as much available work after that date as it did before that date.

This brings us, finally, to the punitive damages award. Mid-Continent argues that there is no basis for punitive damages in any amount. The standard for punitive damages in ADA and other employment discrimination cases is supplied by *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). Under *Kolstad*, punitive damages are proper only when the employer is shown to have discriminated in the face of a perceived risk that its actions would violate federal law. *Id.* at 536. Punitive damages may be awarded against an employer based on the actions of an employee only if the employee was a managerial agent acting within the scope of his employment. *Id.* at 543. McGee qualifies on this score; he was a supervisor with authority to hire, fire, and impose discipline, evidently with little or no review by his superiors (the evidence indicated that his decision to terminate Campbell was, for all practical purposes, the final word on the subject). And the evidence, viewed in the light most favorable to the EEOC, showed that McGee and other supervisors were aware of the legal requirement to make reasonable accommodations to disabled employees. Thus *Kolstad's* requirements were met in this case.[1]

---

[1] The Court disagrees with Mid-Continent's argument that "there is no vicarious liability" for punitive damages. *See* Reply at 7. *Kolstad* does not so hold; indeed, the Court
(continued...)

6

A punitive damages award against an employer cannot be sustained if the employee's discriminatory conduct was contrary to the employer's good faith efforts to comply with the law. *Kolstad*, 527 U.S. at 545-46. But in this case, the evidence reflected that Mid-Continent had done nothing whatsoever to train supervisory personnel in how to comply with the law. The jury properly could have concluded that the company had not engaged in a "good faith effort" to comply with the ADA's requirements.

In sum, the Court concludes that a sufficient basis existed under *Kolstad* to support an award of punitive damages.[2]

The amount of the punitive damages award is another matter altogether. Both the Eighth Amendment and the Due Process Clause prohibit the imposition of "grossly excessive" punishments on tortfeasors. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. ___, 121 S.Ct. 1678, 1684 (2001). Our review is not limited to these constitutional prohibitions; it has long been the law that a court can vacate a jury award that clearly "appears to be the result of passion and prejudice" or that is "monstrously excessive." *E.g., McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir. 1993); *Fall v. Indiana University Board of Trustees*, 33 F. Supp. 2d 729, 744 (N.D. Ind. 1998).

As a matter of constitutional law, the Court is required to conduct an independent review of the award, and in doing we focus on three general criteria: the degree of the defendant's

---

[1](...continued)
adopted a standard that *permits* imposition of punitive damages vicariously, within certain limits. 527 U.S. at 542-46. *See also Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) (noting that "the inquiry [is] controlled by general principles of federal agency law").

[2] Mid-Continent raises no challenge to the jury instructions on punitive damages.

7

reprehensibility or culpability; the relationship between the amount of the penalty and the harm to the victim resulting from the defendant's actions; and the sanctions imposed in other cases for comparable misconduct. *Cooper*, 121 S.Ct. at 1684-85. The same criteria are appropriate to use in reviewing the award under common law principles. *See Fall*, 33 F. Supp. 2d at 744; *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 597 (5th Cir. 1998).

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996). In this case the conduct on which the EEOC's suit was based, though unquestionably illegal, cannot be said to have been among the most reprehensible or egregious ADA violations. Indeed, a Mid-Continent supervisor (Bishop) actually gave Campbell the very accommodation he requested; liability exists only because McGee, without consulting Bishop, peremptorily took away that accommodation. This one-time, sudden shift of gears, though sufficient to support a punitive damages award in some amount, cannot be said to have been egregious when measured against other ADA violations.

The EEOC argues that Mid-Continent tried to cover up its illegal actions and that this warranted a significant punitive damages award. The company's written response to the initial letter of inquiry from the EEOC contained several errors, and it was plausible (though perhaps just barely) to read it as an attempt to fabricate a defense. But the more likely interpretation is not that Mid-Continent was covering up what its employees had done, but rather that McGee had provided his superiors with a false justification for the termination to make it appear that he had acted appropriately. This deception by a mid-level supervisor did not provide a basis to impose a $184,000 punitive damages against the company as a whole.

Moving onto the second *Cooper* factor, we agree with Mid-Continent that proportionality is lacking between the punitive damages and the actual harm that Campbell experienced. This determination cannot be based simply on a mechanical formula or a standard benchmark: "a mechanical ratio ... would not make good sense. The smaller the compensatory damages, the higher the ratio of punitive to compensatory damages has to be in order to fulfill the objectives of awarding punitive damages. ... An award of punitive damages proportioned to ... low compensatory damages ... would have a very meager deterrent effect." *Cooper v. Casey*, 97 F.3d 914, 919-20 (7th Cir. 1996). It is nonetheless noteworthy that the punitive damages award is 175 times higher than the jury's assessment of the actual harm (lost wages and emotional distress). The only employment discrimination case cited by the EEOC in which an award with a greater ratio was affirmed is one in which the jury awarded $1 in compensatory damages and $2,500 in punitive damages, *see Shea v. Galaxie Lumber & Construction Co.*, 152 F.3d 729, 736 (7th Cir. 1998), hardly a pertinent comparison to this case, in which the punitive damage award is in a different range altogether (indeed, it is near the maximum allowed by statute for a defendant like Mid-Continent, *see* 42 U.S.C. §1981a(b)(3)(C)). The Court believes that an award of $184,000 was far more than was reasonably required to meet the objectives of punishment and deterrence. Though the jury was instructed that it should consider the relationship of any punitive damages award to the compensatory damages it had awarded, the Court may not simply rubber-stamp the jury's determination in this regard; we must independently review proportionality. *See Cooper*, 121 S.Ct. at 1685. In this case we conclude that a sense of proportionality was lacking.

Finally, neither party has cited any case in which a jury evaluating a failure-to-accommodate case based on a single incident returned a punitive damage award of anywhere near

9

this level. We have located two fairly recent circuit-level decisions upholding significant punitive damages awards in ADA cases involving claims of failure to accommodate and relatively modest compensatory damages awards. In *Otting v. J.C. Penney Co.*, 223 F.3d 704 (8th Cir. 2000), the jury awarded $100,000 in punitive damages in a case in which it had awarded just over $28,000 in compensatory damages, and in *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241 (10th Cir. 1999), the jury awarded compensatory damages of $3,527 and punitive damages of $75,000. To the extent that comparisons between disparate cases can provide guidance, both of these cases suggest that the jury's award of $184,000 in this case was grossly excessive.

Though an award of punitive damages should be set aside only if it exceeds an amount necessary to achieve both punishment and deterrence, an award that constitutes a mere windfall to the prevailing party is inappropriate. *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995). Having considered the criteria discussed above, the Court finds that the punitive damages award far exceeds what is necessary to accomplish the appropriate objectives of such an award; that it would represent an unjustified windfall; and that it is grossly excessive. The Court agrees with Mid-Continent that a remittitur is appropriate and accordingly will grant a new trial on the issue of punitive damages unless plaintiff accepts a remittitur of the punitive damages award to $50,000.

## Conclusion

Defendant's motion for judgment as a matter of law [Docket Item 47-1] is denied. Defendant's motion to alter or amend the judgment [Item 48-1] is granted. The Clerk is directed to enter an amended judgment which states that judgment is entered in defendant's favor on plaintiff's termination claim and that judgment is entered in plaintiff's favor on its

10

accommodation claim, in the amount of $961.50 for back pay, $187.50 for compensatory damages, and $184,000 for punitive damages. Defendant's motion for a remittitur of the punitive damages award [Item 47-2] is granted. The Court will order a new trial on the issue of punitive damages unless plaintiff accepts, on or before July 30, 2001, a reduction of the punitive damage award to $50,000.

Date: July 11, 2001

MATTHEW F. KENNELLY
United States District Judge